UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HASSAN FAYAD,

        Plaintiff,

                                Case No. 25-cv-10930

v.

LIBERTY MUTUAL INS. CO.; PROGRESSIVE
MICH. INS. CO.; ALLSTATE INS. CO.;
ESURANCE INS. CO., Keisha Glenn, in her
individual capacity; and Karen Fairley, in her
individual capacity,

        Defendants.

_____

SHEREEF H. AKEEL (P54345)
HAYDEN PENDERGRASS (P86888)
EMAD R. HAMADEH (P86849)
Akeel & Valentine, PLC
Attorneys for Plaintiff
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084-4736
(248) 269-9595
shereef@akeelvalentine.com
hayden@akeelvalentine.com
emad@akeelvalentine.com

## **COMPLAINT AND JURY DEMAND**

    **NOW COMES** Plaintiff, HASSAN FAYAD, by and through his undersigned

counsel, AKEEL & VALENTINE, PLC, for this Complaint against the above-

named Defendants, states as follows:

1

## INTRODUCTION

1.       This civil rights action for false arrest, malicious prosecution, and civil conspiracy stems from a targeted, biased prosecution orchestrated and driven by the named Insurer Defendants[1] in conjunction with personnel of the Michigan Department of Attorney General, namely Defendants Keisha Glenn and Karen Fairley. The Insurer Defendants, Glenn, and Fairley trumped up bogus insurance fraud charges in an effort to drive Mr. Fayad and other medical providers out of business.

2.       Under the Michigan law, motorists are required to have automobile insurance coverage but are not required to have health insurance.

3.       Under Michigan No-Fault law, there is a system of payment priority for insurance coverage, where if a driver has health insurance and is involved in an automobile accident, their health insurance is primarily responsible for payment for medical treatment for injuries sustained from a car accident. This saves the auto insurers substantial funds.

4.       Under the Michigan No-Fault priority payment system, any medical expenses not paid by an insured's health insurance company is covered by his or her automobile insurance coverage. This can include co-payments paid to health

---

[1] Defendants Liberty Mutual Insurance Company, Progressive Michigan Insurance Company, Allstate Insurance Company; and Esurance Insurance Company are collectively referred to herein as the "Insurer Defendants".

insurance companies, mileage incurred to drive to a medical provider's facility, or payment of expenses incurred for the treatment of injuries sustained from a car accident.

5.     However, many drivers have little means and cannot afford health insurance coverage, so they primarily rely on their auto insurance coverage in the event they sustain injuries from a car accident. Others, who do not have health insurance or auto insurance but are otherwise entitled to PIP benefits under the No-Fault Act, have their claims assigned to auto insurers under the Michigan Assign Claims Plan.

6.     Certain medical providers cater to such patients when they are involved in car accidents.

7.     However, auto insurers frown upon this segment of society, as they become primarily responsible for and have to cover the cost of medical care of those insureds involved in accidents who do not have health insurance.

8.     As a result, many auto insurance companies—including the Insurer Defendants—have taken an aggressive approach towards medical providers to discourage them from treating these drivers through several means.

9.     First, many auto insurance companies—including the Insurer Defendants—make it very challenging for such insureds to seek payment for medical treatment unlike persons who have health insurance coverage, requiring

medical providers that choose to treat these patients to  submit forms to the auto insurer, which often results in substantial delays before any payment is made and, even if paid, in payments valued at substantially less than what was billed.

10.     Even worse, the auto insurers—including the Insurer Defendants— have now taken a further step in advancing their aggressive techniques by submitting false criminal complaints against medical providers, like Mr. Fayad and his co-defendants, and conspiring with state officials in order to deprive such providers of their liberty and subject their businesses and assets to criminal forfeiture.

11.     Here, the Insurer Defendant conspired with Assistant Attorney General Glenn (who was previously employed by an auto insurer) and Special Agent Fairley to bring criminal insurance fraud charges against Mr. Fayad, obtain a warrant for his arrest, and seek to freeze and encumber his assets without any probable cause. Additionally, this unconstitutional prosecution was accompanied by a massive media blitz of several medical providers including Mr. Fayad, in an additional attempt to discourage other medical providers.

12.     Ultimately, all charges against Mr. Fayad and his co-defendants[2] were dismissed due to lack of probable cause. However, Defendants' conduct caused millions of dollars in damages to Mr. Fayad, emotional and psychological harm, and

---

[2] *See People v. Mohammed Abraham*, 2024-000737-FH; *People v. Robert Presley*, 2024-000738-FH; *People v. Chitra Sinha*, 2024-000739-FH; *People v. Michael Angelo*, 2024-000740-FH; *People v. Thomas Quartz*, 2024-000741-FH.

pecuniary damages, including but not limited to loss of income, the freezing and encumbering of his assets, loss of traveling privileges, and the cost of his criminal defense against Defendants' malicious prosecution.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action based upon 28 U.S.C. §§ 1331, 1343, and 1367 and 42 U.S.C. § 1983.

14.    This Court has personal jurisdiction over the named Defendants because they reside in or otherwise have systematic and continuous contacts with the state of Michigan, including through the transaction of business within the state of Michigan.

15.    Venue lies in the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## THE PARTIES

16.    Plaintiff Hassan Fayad is a citizen and resident of Michigan.

17.    Defendant Liberty Mutual Insurance Company ("Liberty") is a Massachusetts corporation with its principal place of business located in Massachusetts.

18.    Defendant Progressive Michigan Insurance Company ("Progressive") is an Ohio corporation with its principal place of business in Michigan and Ohio.

5

19.    Defendant Allstate Insurance Company ("Allstate") is an Illinois corporation with its principal place of business in Illinois.

20.    Defendant Esurance Insurance Company ("Esurance") is a Wisconsin corporation with its principal places of business in California and Illinois.

21.    Defendant Keisha Glenn is a citizen and resident of Michigan and, at all relevant times, was an Assistant Attorney General with the Michigan Department of Attorney General. Glenn was acting under color of state law and is being sued in her individual capacity. Glenn previously worked for State Farm Insurance Company ("State Farm").

22.    Defendant Karen Fairley is a citizen and resident of Michigan and, at all relevant times, was a Special Investigator with the Michigan Department of Attorney General. Fairley was acting under color of state law and is being sued in her individual capacity.

## FACTUAL ALLEGATIONS

23.    Since 2017, Mr. Fayad has been the owner and operator of businesses that provide transportation services, diagnostics, testing, therapy, and other related services. These businesses regularly submitted claims for payment, under the Michigan No-Fault Act, to the Insurer Defendants for reasonable and medically necessary services rendered to the insureds.

24.     As set forth in Fairley's Investigator's Report, on or about January 27, 2020, a complaint was   filed by Insurer Defendants against Mr. Fayad and several other co-suspects for  insurance fraud. [**Ex. A** – Investigator's Report]. The Insurer Defendants' complaint(s) were submitted by Whitney Poniatowski on behalf of Liberty, Abigail Prout on behalf of Progressive, Carla Monforton-Farris on behalf of Allstate, and Scot Affolter on behalf of Esurance.

25.     The Insurer Defendants' complaint alleged that, between 2017 and 2019, Mr. Fayad and his businesses were members of a scheme to commit insurance fraud.

26.     In support of this alleged scheme, the Insurer Defendants' complaint identified six insureds ("Six Insureds") who allegedly sought treatment or received services from the businesses of either Mr. Fayad or his co-defendants from 2012 to 2018: (1) K.O., who allegedly received services from 2013 to 2016; (2) A.K., who allegedly received services in 2016; (3) D.L., who allegedly received services from 2016 to 2017; (4) M.K., who allegedly received services from 2016 to 2018; (5) R.W., who allegedly received services in 2017; and (6) M.H., who received treatment in 2018. The Investigator's Report only specifically links insured M.H. with Mr. Fayad.

27.     On April 26, 2023, in conspiracy with the Insurer Defendants and Fairley, Glenn charged Mr. Fayad in the 41B District Court with the following seven charges related to the Six Insureds:

      a.    Three counts of conspiracy to commit false pretenses (Counts 1 through 3);

      b.    One count of conducting a criminal enterprise (Count 4); and

      c.    Three counts of insurance fraud (Counts 5 through 7).

28.     The criminal complaint included a notice of criminal forfeiture, stating that certain real property, personal and business bank accounts, and several vehicles were subject to criminal forfeiture. The criminal complaint identified the Insurer Defendants as the victims or complainants.

29.     Glenn brought these criminal insurance fraud charges against Mr. Fayad relating specifically to the Six Insureds.

30.     That same day, in Macomb County Circuit Court, Glenn sought and was granted an ex parte order freezing Mr. Fayad's personal and business bank accounts, certain real property, and personal vehicles. [**Ex. B** – Ex Parte Freeze Order]. This ex parte motion was supported by an affidavit authored by Fairley.

31.     On April 27, 2023, the 41B District Court issued a warrant for Mr. Fayad's arrest. The warrant identified the Insurer Defendants as the victims or complainants. [**Ex. C** – Arrest Warrant]. Glenn sought this warrant using the false

evidence supplied by Fairley and the Insurer Defendants, despite the absence of probable cause

32.     On April 28, 2023, as a result of these criminal charges levied by Glenn, FOX 2 Detroit, among other media outlets, broadcasted a news story regarding the felony charges against Mr. Fayad related to the Six Insureds, s. [**Ex. D** – FOX 2 Detroit Article].

33.     On May 1, 2023, Mr. Fayad and his counsel appeared for an arraignment. Mr. Fayad pleaded not guilty. The 41B District Court set a $100,000 bond, which Mr. Fayad posted to ensure his release from custody.

34.     On May 9, 2023, Mr. Fayad's co-defendant filed a motion, with which Mr. Fayad concurred, to set aside the freeze order. On June 16, 2023, the Macomb County Circuit Court granted the motion to set aside the freeze order, finding that, because Fairley's affidavit in support of the ex parte motion did not indicate that Mr. Fayad and his co-defendant were being charged under Mich. Comp. Laws § 750.159i, the Court did not have jurisdiction to enter the freeze order. [**Ex. E** – Order Setting Aside Ex Parte Freeze Order]. The Court also found that, even if the Court had jurisdiction, Glenn failed to meet her burden to establish that seizing Mr. Fayad's assets was warranted. [*Id.*]. Last, the Court found that, assuming probable cause could serve as a basis for the ex parte freeze order, Fairley's affidavit failed to set forth any facts establishing that any of the real property and assets identified in

her affidavit were in any way used by Mr. Fayad or were the proceeds of illegal activity. [*Id.*].

35.   Undeterred by this adverse ruling, on September 25, 2023, Glenn still filed a notice of lis pendens on Mr. Fayad's real property at 1830 Hollywood St., Dearborn, Michigan 58125. [**Ex. F** – Notice of Lis Pendens].

36.   Beginning on December 11, 2023, the 41B District Court held a three-day preliminary examination for Mr. Fayad and his co-defendants.

37.   At the preliminary examination, Dustin Wild, an adjuster for Defendant Esurance, testified for the prosecution.

38.   Fairley, testified that she never met with representatives from the Insurer Defendants, instead relying solely on their complaints and other information furnished by the Insurer Defendants.

39.   Additionally, the only other evidence related to Mr. Fayad presented at the preliminary examination, namely, several emails and a facilitation summary from an Allstate insured, was entered into the record by stipulation, and no witness testified regarding this evidence.

40.   On March 1, 2024, the State filed a motion for bindover in lieu of a bill of particulars. Glenn argued that, with respect to Mr. Fayad, conspired with his co-defendants to submit claims for unlawfully rendered, unreasonable, or unnecessary medical services to the Insurer Defendants. Of the Six Insureds identified by the

Insurer Defendants and used by Glenn and Fairley, the State proffered a single email involving one insured, M.H., and a facilitation summary involving another insured, M.K., to argue for probable cause to prosecute Mr. Fayad.

41.     On March 13, 2024, the 41B District Court granted the motion, and Mr. Fayad was bound over to the Macomb County Circuit Court.

42.     On March 15, 2024, due to the efforts of Glenn and Fairley and the Insurer Defendants, the Michigan Department of Attorney General issued a press release regarding its prosecution of Mr. Fayad. [**Ex. G** – Attorney General Press Release]. That same day, the Detroit News released a news article regarding the State's prosecution of Mr. Fayad. [**Ex. H** – Detroit News Article].

43.     On March 22, 2024, the State filed a criminal information with the Macomb County Circuit Court, which set out the same charges related to the Six Insureds and notice of criminal forfeiture. [**Ex. I** – Criminal Information] The criminal information identified the Insurer Defendants as the alleged victim or complainant.

44.     On June 18, 2024, Mr. Fayad filed a motion to quash the charges against him on the basis of insufficient probable cause.

45.     On October 1, 2024, the Macomb County Circuit Court granted Mr. Fayad's motion to quash and dismissed the charges against Mr. Fayad. [**Ex. J** – Order Granting Motion to Quash].

46.     The Macomb County Circuit Court found that there was no probable cause to support any of the charges against Mr. Fayad. Notably, the Court found *inter alia* the following:

    a.    There was "no evidence that Fayad knew about" his co-defendant's "background, as there's no evidence [Fayad] knew that" his co-defendant "did not have any medical training or background."

    b.    "[N]one of the evidence link[ed] Fayad to" his co-defendants' "billing practices or interactions with the insurance companies."

    c.    "[T]here's no evidence Fayad knew that any of the treatments or procedures performed by the medical providers whom he arranged for clients to visit" were "'not lawfully rendered, reasonable, or necessary.' There's no evidence [Fayad] made any medical decisions or that he ever had any interactions or conversations with the medical providers."

[*Id.*].

47.     Of the Six Insureds identified in the Insurer Defendants' complaint and used by Glenn and Fairley, the Court found that the State failed to present sufficient evidence that there was probable cause to link Mr. Fayad with a scheme to treat any of the Six Insureds. To wit, the Court found that the emails involving M.H. and the facilitation summary involving M.K. were insufficient to establish probable cause. [*Id.*].

48.     Indeed, Mr. Fayad was not even in the medical provider industry during the majority of the time Six Insureds sought treatment. Defendants simply had no

basis to implicate Mr. Fayad in any wrongdoing related to the treatment of the Six Insureds.

49.     On October 24, 2024, the State filed a notice of release of intent to forfeit and discharge of the freeze order that targeted Mr. Fayad's assets.

50.     In January 2025, Mr. Fayad and his family applied for TSA Precheck. While every other member of his family were approved for TSA Precheck, Mr. Fayad received a denial letter on March 20, 2025, stating that his application was denied because the pending criminal charges for insurance fraud in state court, despite the fact that such charges had been dismissed on October 24, 2025. [**Ex. K – TSA Precheck Denial**].

<u>**COUNT ONE**</u>

**42 U.S.C. § 1983**
**Violation of the Fourth Amendment: False Arrest**
**Against All Defendants**

51.     Plaintiff incorporates by reference paragraphs 1 to 50, as if fully set forth herein.

52.     Mr. Fayad has a constitutional right, guaranteed by the Fourth Amendment, to be free of unreasonable search and seizure not supported by probable cause.

53.     In conducting their "investigation" initiated by the Insurer Defendants, Defendants Glenn and Fairley had no probable cause that Mr. Fayad engaged in

insurance fraud related to the Six Insureds to support the arrest warrant sought against Mr. Fayad.

54.     Despite this lack of probable cause, Mr. Fayad was required to appear for an arraignment pursuant to the arrest warrant and post a $100,000 bond to prevent his pretrial detention.

55.     At the preliminary examination, not a single witness testified to Mr. Fayad's involvement in the alleged crimes to support a finding of probable cause. Moreover, the documentary evidence, almost entirely provided by the Insurer Defendants and used by Defendants Glenn and Fairley, that was entered into the record and cited in the State's motion for bindover was equally insufficient to establish probable cause for the insurance fraud charges related to the Six Insureds.

56.     Because the Insurer Defendants conspired with state actors, Defendants Glenn and Fairley, to violate Mr. Fayad's constitutional protection against false arrest, the Insurer Defendants acted under color of state law.

57.     As a direct and proximate result of Defendants' conduct, Mr. Fayad suffered harm, including but not limited to severe and serious emotional distress, embarrassment, humiliation, and loss of travel privileges. . Mr. Fayad also suffered pecuniary damages as a result of the prosecution against him. Additionally, Mr. Fayad personally covered the cost of his legal defense.

**WHEREFORE**, Plaintiff seeks judgment against Defendants for compensatory damages, including non-economic and economic damages; punitive damages; costs and attorney fees; and any other relief this Court deems just and equitable.

## COUNT TWO

**42 U.S.C. § 1983**
**Violation of the Fourth & Fourteenth Amendments: Malicious Prosecution Against Insurer Defendants & Defendant Fairley**

58.     Plaintiff incorporates by reference paragraphs 1 to 50, as if fully set forth herein.

59.     To make out a malicious prosecution claim under § 1983, a plaintiff must show that legal process was instituted without probable cause and that the criminal prosecution was terminated in the plaintiff's favor. *Thompson v. Clark*, 596 U.S. 36, 44 (2022).

60.     As described above, the arrest warrant and criminal prosecution for insurance fraud against Mr. Fayad related to the Six Insureds were not supported by probable cause. Yet Defendant Fairley, in complete reliance on the false and/or misleading complaint(s) provided by the Insurer Defendants related to the Six Insureds, recommended to the prosecutor the arrest and prosecution of Mr. Fayad.

61.    The criminal prosecution of Mr. Fayad was terminated in his favor, as all charges against him for insurance fraud related to the Six Insureds were dismissed for lack of probable cause

62.    Because the Insurer Defendants conspired with state actor, Defendant Fairley, to violate Mr. Fayad's constitutional protections against malicious prosecution, the Insurer Defendants acted under color of state law.

63.    As a direct and proximate result of Defendants' conduct, Mr. Fayad suffered harm, including but not limited to severe and serious emotional distress, embarrassment, humiliation, and loss of travel privileges. . Mr. Fayad also suffered pecuniary damages as a result of the prosecution against him. Additionally, Mr. Fayad personally covered the cost of his legal defense.

**WHEREFORE**, Plaintiff seeks judgment against the Insurer Defendants and Defendant Fairley for compensatory damages, including non-economic and economic damages; punitive damages; costs and attorney fees; and any other relief this Court deems just and equitable.

## COUNT THREE

### 42 U.S.C. § 1983
### Violations of the Fifth & Fourteenth Amendment: Substantive Due Process Against the Insurer Defendants & Defendant Fairley

64.    Plaintiff incorporates by reference paragraphs 1 to 50, as if fully set forth herein.

65.    Mr. Fayad had a clearly established substantive due process right to the property and assets that were subject to the ex parte freeze order and lis pendens.

66.    The ex parte freeze order of Mr. Fayad's assets and property were sought and secured without probable cause and from a court without jurisdiction was so arbitrary, irrational, and egregious that it shocks the conscience.

67.    The ex parte freeze order was sought and secured in complete reliance on Defendant Fairley's false and/or misleading information regarding Mr. Fayad's alleged commission of insurance fraud related to the Six Insureds as well as the false and/or misleading information provided by the Insurer Defendants.

68.    No extraordinary circumstances warranted seeking the ex parte freeze order, and there was no probable cause to link Mr. Fayad's property and assets with the commission of the charged crimes or to support that such property and assets were the product of any illegal activity.

69.    Undeterred by the adverse ruling setting aside the ex parte freeze order, a lis pendens was filed on Mr. Fayad's real property, despite the lack of probable cause and the setting aside of the ex parte freeze order.

70.    The lis pendens was filed in complete reliance on Defendant Fairley's false and/or misleading reports and affidavits and the false and/or misleading information provided by the Insurer Defendants

17

71.     The ex parte freeze order and lis pendens, sought and secured without probable cause, were not rationally related to a legitimate government interest.

72.     Because the Insurer Defendants conspired with state actors, Defendants Glenn and Fairley, to violate Mr. Fayad's constitutional rights, the Insurer Defendants acted under color of state law.

73.     As a direct and proximate result of Defendants' conduct, Mr. Fayad suffered harm, including but not limited to severe and serious emotional distress, embarrassment, humiliation, and loss of travel privileges. . Mr. Fayad also suffered pecuniary damages as a result of the prosecution against him. Additionally, Mr. Fayad personally covered the cost of his legal defense.

**WHEREFORE**, Plaintiff seeks judgment against the Insurer Defendants and Defendant Fairley for compensatory damages, including non-economic and economic damages; punitive damages; costs and attorney fees; and any other relief this Court deems just and equitable.

## COUNT FOUR

### Civil Conspiracy Under 42 U.S.C. § 1983
### Against All Defendants

74.     Plaintiff incorporates by reference paragraphs 1 to 50, as if fully set forth herein.

75.     A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290

(6th Cir. 2007). The elements of a § 1983 civil conspiracy are: "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed" in furtherance of the conspiracy. Id.

76.    The Insurer Defendants conspired and came to an agreement with Defendants Glenn and Fairley to deprive Mr. Fayad of his constitutional rights secured under the Fourth, Fifth, and Fourteenth Amendments.

77.    Because the Insurer Defendants conspired with state actors, Defendants Glenn and Fairley, to violate Mr. Fayad's constitutional rights, the Insurer Defendants acted under color of state law.

78.    The Insurer Defendants, Defendant Glenn, and Defendant Fairley had a single plan to directly cause and institute the prosecution of Mr. Fayad for insurance fraud related to the Six Insureds without probable cause.

79.    The Insurer Defendants, Defendant Glenn, and Defendant Fairley shared a conspiratorial objective to deprive Mr. Fayad of his constitutional rights under the Fourth and Fourteenth Amendment.

80.    The Insurer Defendants each committed overt acts in furtherance of the conspiracy, including but not limited to the submission of their complaint(s) and provision of false and/or misleading information to the Michigan Department of Attorney General..

81.     Defendant Glenn committed overt acts in furtherance of the conspiracy, including but not limited leading a compromised investigation and presenting false and/or misleading information that led to Mr. Fayad being charged for insurance fraud related to the Six Insureds and subject to an arrest without probable cause..

82.     Defendant Fairley committed overt acts in furtherance of the conspiracy, including but not limited to conducting a compromised investigation, fraught with false and/or misleading information, that led to Mr. Fayad being charged for insurance fraud related to the Six Insureds and arrested without probable cause..

83.     As a direct and proximate result of Defendants' conspiratorial conduct, Mr. Fayad suffered harm, including but not limited to severe and serious emotional distress, embarrassment, humiliation, and loss of travel privileges.  Mr. Fayad also suffered pecuniary damages as a result of the prosecution against him. Additionally, Mr. Fayad personally covered the cost of his legal defense.

**WHEREFORE**, Plaintiff seeks judgment against the Insurer Defendants and Defendant Fairley for compensatory damages, including non-economic and economic damages; punitive damages; costs and attorney fees; and any other relief this Court deems just and equitable.

## COUNT FIVE

**Malicious Prosecution in Violation of Michigan Law
Against Insurer Defendants & Defendant Fairley**

84.     Plaintiff incorporates by reference paragraphs 1 to 50, as if fully set forth herein.

85.     The Insurer Defendants' complaint against Mr. Fayad directly caused the institution of the prosecution against Mr. Fayad by Defendants Glenn and Fairley, who entirely relied on the knowingly false and/or misleading information regarding Mr. Fayad furnished by the Insurer Defendants and did not conduct an independent investigation.

86.     The Insurer Defendants continued participation in the prosecution, including by providing false and/or misleading documentary evidence and testimony of their personnel to the Michigan Department of Attorney General, directly caused the continuation of the prosecution against Mr. Fayad by Defendants Glenn and Fairley.

87.     The prosecution of Mr. Fayad was terminated in his favor, when the Macomb County Circuit Court granted Mr. Fayad's motion to quash based on the absence of probable cause.

88.     There was no probable cause to support the prosecution of Mr. Fayad.

89.     The Insurer Defendants acted with malice, as they submitted their complaint to the Michigan Department of Attorney General for purposes other than

that of securing the proper adjudication of the criminal charges. The Insurer Defendants' complaint to the Michigan Department of Attorney General was part and parcel of their systematic effort to target Mr. Fayad and his businesses.

90. The Insurer Defendants knowingly gave false and/or misleading information regarding Mr. Fayad to the Michigan Department of Attorney General that led to Mr. Fayad's prosecution for insurance fraud related to the Six Insureds by Defendants Glenn and Fairley. The Insurer Defendants never corrected the false and/or misleading information regarding Mr. Fayad they provided to the Michigan Department of Attorney General and took an active role in the prosecution of Mr. Fayad by providing documentary evidence and the testimony of their personnel to the Michigan Department of Attorney General.

91. As a direct and proximate result of Defendants' conduct, Mr. Fayad suffered harm, including but not limited to severe and serious emotional distress, embarrassment, humiliation, and loss of travel privileges. Mr. Fayad also suffered pecuniary damages as a result of the prosecution against him. Additionally, Mr. Fayad personally covered the cost of his legal defense.

**WHEREFORE**, Plaintiff seeks judgment against the Insurer Defendants and Defendant Fairley for compensatory damages, including non-economic and economic damages; punitive damages; and any other relief this Court deems just and equitable.

## COUNT SIX

### Gross Negligence in Violation of Mich. Comp. Laws § 691.1407
### Against Defendant Fairley

92.   Plaintiff incorporates by reference paragraphs 1 to 50, as if fully set forth herein.

93.   Under Michigan law, law enforcement officers are not immune from liability for tortious conduct done in the course of their employment when that conduct amounts to gross negligence that is the proximate cause of a plaintiff's injury or damage. Mich. Comp. Laws § 691.1047(2)(c).

94.   "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. Mich. Comp. Laws § 691.1407(8)(a).

95.   At all relevant times, Defendant Fairley was acting in the course of her employment with the Michigan Department of Attorney General and within the scope of her authority of promoting the governmental function of investigating crimes.

96.   Defendant Fairley was under a duty to avoid engaging in conduct so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Mr. Fayad.

97.   Defendant Fairley engaged in grossly negligent conduct with regard in seeking the arrest and prosecution of Mr. Fayad for insurance fraud related to the

Six Insureds. Specifically, Defendant Fairley engaged in conduct so reckless as to demonstrate a substantial lack of concern as to whether Mr. Fayad would be wrongfully arrested, detained and convicted.

98.     Defendant Fairley breached her duty by subjecting Mr. Fayad to criminal process, including an arrest warrant, without probable cause.

99.     Defendant Fairley breached her duty by engaging in unconstitutional conduct set forth above.

100.    The grossly negligent conduct of Defendant Fairley was the proximate cause of Plaintiff's prosecution without probable cause.

101.    As a direct and proximate result of Defendant Fairley's conduct, Mr. Fayad suffered harm, including but not limited to severe and serious emotional distress, embarrassment, humiliation, and loss of travel privileges. .. Mr. Fayad also suffered pecuniary damages as a result of the prosecution against him. Additionally, Mr. Fayad personally covered the cost of his legal defense.

102.    Defendant Fairley is liable for Mr. Fayad's injuries and damages under Mich. Comp. Laws § 691.1407.

**WHEREFORE**, Plaintiff seeks judgment against Defendant Fairley for compensatory damages, including non-economic and economic damages; punitive damages; and any other relief this Court deems just and equitable.

## **RELIEF REQUESTED**

103. Plaintiff requests that this Court issue the following relief:

    a.    An order entering judgment in favor of Plaintiff against Defendants;

    b.    An award judgment against Defendants for compensatory damages, including but not limited to non-economic and economic damages, all damages recoverable under the U.S. Constitution, 42 U.S.C. § 1983, and/or the laws of the State of Michigan, and punitive damages, as well as reasonable attorney fees and costs under 42 U.S.C § 1988;

    c.    Any other relief this Court deems proper and just.


Respectfully submitted,

AKEEL & VALENTINE, PLC

*/s/Shereef H. Akeel*
Shereef H. Akeel (P54345)
Hayden Pendergrass (P86888)
Emad R. Hamadeh (P86849)
*Attorneys for Plaintiff*
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hayden@akeelvalentine.com
emad@akeelvalentine.com

DATED: April 1, 2025

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HASSAN FAYAD,

        Plaintiff,

                                     Case No. 25-cv-10930

v.

LIBERTY MUTUAL INS. CO.; PROGRESSIVE
MICH. INS. CO.; ALLSTATE INS. CO.;
ESURANCE INS. CO., Keisha Glenn, in her
individual capacity; and Karen Fairley, in her
individual capacity,

        Defendants.

_____

SHEREEF H. AKEEL (P54345)
DANIEL W. CERMAK (P84460)
HAYDEN PENDERGRASS (P86888)
Akeel & Valentine, PLC
Attorneys for Plaintiff
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084-4736
(248) 269-9595
shereef@akeelvalentine.com
daniel@akeelvalentine.com
hayden@akeelvalentine.com

**<u>JURY DEMAND</u>**

NOW COMES Plaintiff, HASSAN FAYAD, by and through his undersigned counsel, AKEEL & VALENTINE, PLC, and hereby demands a Trial by Jury of the above-referenced cause of action.

26

Respectfully submitted,

AKEEL & VALENTINE, PLC

/s/Shereef H. Akeel
Shereef H. Akeel (P54345)
Hayden Pendergrass (P86888)
Emad R. Hamadeh (P86849)
*Attorneys for Plaintiff*
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hayden@akeelvalentine.com
emad@akeelvalentine.com

DATED: April 1, 2025